IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHRISTOPHER L. WILLIAMS | : | |
| v. | : | Civil No. CCB-14-1422 |
| RAY MABUS | : | |

**MEMORANDUM**

Now pending before the court is the defendant's motion to dismiss or, in the alternative, for summary judgment. Plaintiff Christopher L. Williams ("Williams"), representing himself, has sued Ray Mabus ("Mabus"), Secretary of the United States Department of the Navy ("Navy"), for violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* (2006), alleging employment discrimination on the basis of race. The issues in this case have been fully briefed and no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the defendant's motion will be granted.

**BACKGROUND**

At the time of the events giving rise to this lawsuit, Williams, an African-American male, was a computer engineer employed by the Naval Surface Warfare Center Carderock Division ("NSWCCD") in Bethesda, Maryland. (Pl.'s Compl., at 1, ECF No. 1.) Williams alleges he was discriminated against by David Ingler ("Ingler"), his supervisor, and Frances Rasmussen ("Rasmussen"), who upheld Ingler's actions in a formal administrative grievance decision. (*See id.*, at 1-3; Pl.'s Suppl. to Compl., at 2-3, ECF No. 3.)

Williams's allegations involving Ingler include several, discrete incidents. On January 31, 2013, Ingler removed Williams from his project and placed him on a restrictive work

1

schedule for falsifying his timesheets to not reflect several late arrivals at work, and sleeping on the job. (Pl.'s Compl., at 2.) On February 1, 2013, Ingler asked Williams to provide a written account of the previous day's incident. (Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J. ("Def.'s Mot.") Ex. A, Pl.'s Formal EEOC Compl., at 2, ECF No. 15-2.) On February 4, 2013, Ingler allegedly failed to discipline two white employees who similarly had accounted for their time improperly. (*Id.*; *see also* Pl.'s Compl., at 2.) Williams also claims two white employees who were caught sleeping on the job were not reprimanded. (Pl.'s Compl., at 1-2.) On March 7, 2013, Ingler issued a letter of reprimand to Williams for his behavior, (Def.'s Mot. Ex. B, Letter of Reprimand, ECF No. 15-3), and allegedly did not issue letters of reprimand to any other employees. (Pl.'s Compl., at 1-2.)

On March 15, 2013, Williams filed a grievance with Rasmussen that requested the letter of reprimand be removed from his personnel file. (Def.'s Mot. Ex. C, ECF No. 15-4.) Williams provided several reasons for his tardiness, improper accounting of time, and sleeping. In particular, he explained, *inter alia*, that the timesheet policy was new, (*id.* at 6), car trouble caused him to be late several days, (*id.* at 6, 7), several of his logged hours reflected time worked at his hotel, (*id.* at 6, 7), and family problems that kept him up late and a migraine caused him to doze off at work, (*id.* at 8-9). Williams again alleged that others who had not logged their hours properly or slept on the job were not targeted by Ingler. (*Id.* at 7, 9.) Rasmussen sustained the letter of reprimand except for Williams's tardiness on a Saturday, when all project employees were supposed to arrive at work an hour later than usual. (Def.'s Mot. Ex. D, Decision on Formal Administrative Grievance, at 2, ECF No. 15-5.) Rasmussen explained that Williams had been informed of the timesheet policy, no evidence substantiated his claim that he worked from his

hotel and he did not have permission to work from the hotel, and he was seen sleeping on the job by co-workers. (*Id.*)

On May 7, 2013, Williams received an email from Josephine McGrath ("McGrath"), NSWCCD Complaints Manager, presumably in response to an inquiry from Williams.[1] (Def.'s Mot. Ex. E, ECF No. 15-6.) The email attached information about the Equal Employment Opportunity ("EEO") complaint process, copied the Division EEO Counselor on the email, and informed Williams that he had forty-five days from the discriminatory incident or personnel action to file an EEO precomplaint. (*Id.*) Williams alleges he submitted his EEO precomplaint on May 22, 2013,[2] (Pl.'s Compl., at 3), and he filed a formal EEO complaint which was received by the NSWCCD EEO Officer on July 10, 2013. (Def.'s Mot. Ex. F, EEO Officer Dismissal of Discrimination Compl., at 1, ECF No. 15-7.) On July 12, 2013, the EEO Officer dismissed Williams's official discrimination complaint for failure to bring the precomplaint in a timely fashion, pursuant to 29 C.F.R. § 1614.107(a)(2). (*Id.* at 2.) Williams timely appealed this decision to the Equal Employment Opportunity Commission ("EEOC"). (Suppl. to Pl.'s Compl. Attach. 1, EEOC Decision, at 1, ECF No. 3-1.) The EEOC affirmed the EEO Officer's decision on January 27, 2014. (*Id.*, at 2.)

## ANALYSIS

### A. Standard of Review

---

[1] The defendant alleges that Williams contacted McGrath on May 7, 2013, to file his discrimination complaint. (Def.'s Mot. Attach. 1, Mem. of Law, at 4, ECF No. 15-1.) Exhibit E, which is the email from McGrath to Williams, does not include any communication initiated by Williams. (Def.'s Mot. Ex. E, ECF No. 15-6.)

[2] In his response to the defendant's motion to dismiss or, in the alternative, for summary judgment, Williams has included a receipt that shows a piece of certified mail was sent to a Navy EEO Department in Norfolk, Virginia on May 22, 2013, and delivered on May 24, 2013. (Pl.'s Resp. in Opp'n to Def.'s Mot., at 5, ECF No. 20.) The receipt does not indicate the content of the mail. The EEO Officer who dismissed Williams's discrimination complaint acknowledged that Williams's precomplaint was dated May 22, 2013. (EEO Officer Dismissal of Discrimination Compl., at 2.)

The defendants have moved to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or, in the alternative, for summary judgment under Fed. R. Civ. P. 56. A court considers only the pleadings when deciding a Rule 12(b)(6) motion. Where the parties present matters outside of the pleadings and the court considers those matters, as here, the motion is treated as one for summary judgment. *See* Fed. R. Civ. P. 12(d); *Gadsby by Gadsby v. Grasmick*, 109 F.3d 940, 949 (4th Cir. 1997); *Paukstis v. Kenwood Golf & Country Club, Inc.*, 241 F. Supp. 2d 551, 556 (D. Md. 2003). "There are two requirements for a proper Rule 12(d) conversion." *Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013). First, all parties must be given "some indication by the court . . . that it is treating the 12(b)(6) motion as a motion for summary judgment," which can be satisfied when a party is "aware that material outside the pleadings is before the court." *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998) (commenting that a court has no obligation "to notify parties of the obvious"). "[T]he second requirement for proper conversion of a Rule 12(b)(6) motion is that the parties first 'be afforded a reasonable opportunity for discovery.'" *Greater Baltimore*, 721 F.3d at 281.

Williams had adequate notice that the defendant's motion might be treated as one for summary judgment. The motion's alternative caption and attached materials are in themselves sufficient indicia. *See Laughlin*, 149 F.3d at 260-61. Williams referred to the motion in his opposition brief as one for summary judgment and submitted additional documentary exhibits. (*See* Pl.'s Resp. in Opp'n to Def.'s Mot. ("Pl.'s Resp."), at 1, ECF No. 20.) Moreover, the court explained in a letter to Williams that the motion was either to dismiss or, in the alternative, for summary judgment. (*See* ECF No. 16.) If the plaintiff had thought he needed additional evidence

to oppose summary judgment, Rule 56(d), which he has not invoked, afforded him the opportunity to seek further discovery through an affidavit. *See* Fed. R. Civ. P. 56(d); *see also Greater Baltimore*, 721 F.3d at 281 ("[The defendant] took 'the proper course' when it filed the Rule 56([d]) Affidavit, 'stating that it could not properly oppose . . . summary judgment without a chance to conduct discovery.'") (citation omitted); *Laughlin*, 149 F.3d at 261 (refusing to overturn district court's grant of summary judgment on assertions of inadequate discovery when the nonmoving party failed to make an appropriate motion under Rule 56([d])). Therefore, the court will consider the additional materials submitted by the parties and will treat the motion of the defendant as a motion for summary judgment.

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.* at 248.

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)).

5

The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted). The court is mindful that Williams is a self-represented litigant in this proceeding and accords his pleadings liberal construction. *See Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Liberal construction, however, does not mean that the court can assume the existence of a genuine issue of material fact where none exists. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 390 (4th Cir. 1990).

Title VII makes it unlawful to discriminate in employment on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). Where, as in this case, there is no direct evidence of discrimination, such claims are analyzed under the three-pronged burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, to defeat a defendant's motion for summary judgment, a plaintiff must first make out a *prima facie* case of discrimination or retaliation under Title VII. *Lettieri v. Equant Inc.*, 478 F.3d 640, 646 (4th Cir. 2007). If the plaintiff succeeds in carrying out the initial burden, then "the burden shifts to the employer . . . 'to articulate a legitimate, nondiscriminatory reason for the adverse employment action.'" *Id.* (quoting *Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 285 (4th Cir. 2004) (en banc)). Once such a reason is provided, the burden shifts back to the plaintiff to demonstrate that the given reason was a pretext for unlawful discrimination. *Id.*

B. **Title VII Claims**

    a. <u>Alleged discrimination by Ingler</u>

Williams alleges that Ingler discriminated against him in a series of incidents that occurred between January 31, 2013, and March 7, 2013. Because Williams failed to exhaust administrative remedies regarding Ingler's alleged discrimination, the defendant's motion for summary judgment with respect to those incidents will be granted.

Federal employees alleging discrimination under Title VII must exhaust their remedies before filing suit. *See Laber v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006). The "administrative remedies available for federal employees are significantly broader than the administrative remedies for employees in the private sector." *Id.* at 416. Pursuant to regulation, federal employees "who believe they have been discriminated against on the basis of race, color, religion, sex, national origin, age, disability, or genetic information must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." 29 C.F.R. § 1614.105(a). And they must "initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *Id.* § 1614.105(a)(1). Failure to comply mandates dismissal, *Lorenzo v. Rumsfeld*, 456 F. Supp. 2d 731, 734 (E.D. Va. 2006) (citing *Zografov v. Veterans Admin. Med. Ctr.*, 779 F.2d 967, 970 (4th Cir. 1985)), unless the plaintiff provides evidence that he was unaware of the time limits for contacting an EEO counselor, or the government engaged in affirmative misconduct in relation to the plaintiff seeking counseling. *Id.* at 734–35; 29 C.F.R. § 1614.105(a)(2).

Williams alleges he submitted his EEO precomplaint on May 22, 2013. (Pl.'s Compl., at

3.) The defendant counters that the wrong EEO office received Williams's precomplaint on June 6, 2013, and the correct EEO office did not receive it until June 11, 2013. (Def.'s Mot. Attach. 1, Mem. of Law, at 5, ECF No. 15-1; EEO Officer Dismissal of Discrimination Compl., at 2.) The EEO Officer who dismissed Williams's formal discrimination complaint acknowledged his precomplaint was dated May 22, 2013. (EEO Officer Dismissal of Discrimination Compl., at 2.) Even if Williams is correct and he submitted his precomplaint on May 22, 2013, it would still be untimely. The last discriminatory action by Ingler, as alleged by Williams, occurred on March 7, 2013. (Pl.'s Compl., at 1; Pl.'s Formal EEOC Compl., at 2.) Williams was required to initiate contact with an EEO counselor within forty-five days of March 7, 2013, or by April 21, 2013. 29 C.F.R. § 1614.105(a)(1). Furthermore, Williams does not argue he was unaware of the time limits for seeking EEO counseling, or that the government engaged in affirmative misconduct in connection with his failure to seek timely counseling.

Therefore, even viewing the facts in the light most favorable to Williams, there is no genuine dispute that Williams submitted his precomplaint more than a month after the regulatory deadline.[3] Accordingly, the defendant's motion for summary judgment with respect to Williams's claims involving Ingler will be granted.

b. Alleged discrimination by Rasmussen

Whether Williams exhausted his administrative remedies regarding Rasmussen's decision on his formal administrative grievance is a closer call. As will be discussed below, even if

---

[3] Even if his claims were not time barred, given the several and repeated performance issues attributed to him, Williams has not shown Ingler failed to discipline similarly situated white employees. Williams names two white co-workers who were caught sleeping on the job but not disciplined. (Pl.'s Compl., at 1-2.) He identifies two other white employees who falsified their timesheets but were not disciplined. (*Id.* at 2.) Williams, however, did both, and he did both several times. (Letter of Reprimand, at 12-13.) Accordingly, even if his complaints were not time barred, Williams has not shown comparably serious misconduct by other employees necessary to succeed on a discriminatory discipline claim.

Williams timely filed an EEO precomplaint about the formal administrative grievance outcome, Williams has not made out a *prima facie* case that Rasmussen's decision was discriminatory. Therefore, the defendant's motion for summary judgment as pertains to Williams's claim involving Rasmussen will be granted.

On April 11, 2013, Rasmussen, the head of the Survivability and Weapons Effects Division, upheld Ingler's letter of reprimand except as pertained to Williams's late arrival on a Saturday. (Decision on Formal Administrative Grievance, at 2.) For Williams to have properly exhausted his administrative remedies regarding Rasmussen's decision, he was required to "initiate contact with a Counselor" within forty-five days of the alleged discrimination, 29 C.F.R. § 1614.105(a)(1), or by May 26, 2013. Williams alleges he submitted his EEO precomplaint on May 22, 2013, which would have fallen within the 45-day deadline. (Pl.'s Compl., at 3; Pl.'s Resp., at 3-5.) The EEO Officer who dismissed Williams's discrimination complaint acknowledged his precomplaint was dated May 22, 2013. (EEO Officer Dismissal of Discrimination Compl., at 2.) The defendant, however, argues that Williams did not contact the EEO counselor's office until June 6 at the earliest, which would have fallen outside the deadline. (Def.'s Mem. of Law, at 5.) It also could be argued that Williams's May 2013 email to McGrath, the NSWCCD Complaints Manager, presumably to request information about the EEO complaint process, marked the date on which Williams "initiate[d] contact" with an EEO counselor.[4] *See* 29 C.F.R. § 1614.105(a)(1). The defendant alleges Williams's email

---

[4] The regulation does not define the term "initiate contact," but the EEOC has issued a number of decisions that interpret it to require that the employee "contact[] an agency official logically connected with the EEO process" and "exhibit[] an intent to begin the EEO process." *Allen v. Runyon*, Doc. No. 05950933, 1996 WL 391224, at *3 (E.E.O.C. July 8, 1996). Several courts have deferred to the EEOC's interpretation. *See Pauling v. Secretary of Dep't of Interior*, 960 F. Supp. 793, 803 (S.D.N.Y. 1997), *rev'd in part on other grounds*, 160 F.3d 133 (2d Cir. 1998); *Pueschel v. Veneman*, 185 F. Supp. 2d 566, 569 (D. Md. 2002); *cf. Auer v. Robbins*, 519 U.S. 452, 461 (1997) (An agency interpretation of its own regulation is controlling unless "plainly erroneous or inconsistent with

correspondence was sent on May 7, 2013, (*see* Def.'s Mem. of Law, at 4), which would have fallen within the 45-day deadline.

Ultimately, it is not necessary to determine whether Williams "initiate[d] contact" with an EEO counselor regarding Rasmussen's decision within the 45-day deadline because, even if he did, Williams cannot establish that Rasmussen's decision was discriminatory.

To establish a *prima facie* case of race discrimination in the context of allegedly disparate discipline, the plaintiff must show: "(1) that he is a member of the class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees." *Cook v. CSX Transp. Corp.*, 988 F.2d 507, 511 (4th Cir. 1993) (*citing Moore v. City of Charlotte,* 754 F.2d 1100, 1105–06 (4th Cir. 1985)). The plaintiff must show that employees outside the protected class were similarly situated in all relevant respects, and although they need not have engaged in "precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances," *id.* at 511, the similarity between the "seriousness of their respective offenses must be clearly established . . . ." *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008). Furthermore, in most cases, "[t]o be similarly situated the employees must have been disciplined by the same supervisor." *McDougal-Wilson v. Goodyear Tire and Rubber Co.*, 427 F. Supp. 2d 595, 610 (E.D.N.C. 2006) (citing *Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 618 (7th Cir. 2000)); *see also Forrest v. Transit Mgmt. of*

---

the regulation."). Given that McGrath responded to Williams's email with information about the EEO process, it is likely that Williams "exhibited an intent to begin the EEO process." (*See* Def.'s Mot. Ex. E, ECF No. 15-6.) And given that McGrath copied the Division EEO Counselor on the email, it is likely that Williams contacted an agency official "logically connected with the EEO process." (*Id.*) If Williams in fact emailed McGrath on May 7, 2013, (Def.'s Mem. of Law, at 4), he would have "initiate[d] contact" within the 45-day deadline.

*Charlotte, Inc.*, 245 F. App'x 255, 257 (4th Cir. 2007) ("If different decision-makers are involved, employees are generally not similarly situated.") (citing *Plair v. E.J. Brach & Sons, Inc.*, 105 F.3d 343, 350 n.3 (7th Cir. 1997).[5] If the plaintiff is able to prove a *prima facie* case, the *McDonnell Douglas* burden-shifting scheme is invoked. *See Cook*, 988 F.2d at 511; *McDonnell Douglas*, 411 U.S. at 802.

Williams, an African-American male, is a member of a class protected by Title VII, but he cannot establish he was similarly situated to other employees. To establish a *prima facie* case of race discrimination, Williams would have to show that the same supervisor – in this case Rasmussen – disciplined him differently from other employees outside the protected class who demonstrated similar misbehavior. *See McDougal-Wilson*, 427 F. Supp. 2d at 610. Williams alleges that Ingler treated him differently from other employees outside the protected class, but he offers no evidence of such conduct by Rasmussen. Indeed, he does not provide any information on other disciplinary decisions by Rasmussen. Therefore, even viewing the facts and drawing reasonable inferences in the light most favorable to Williams, there is no genuine issue for trial. The defendant's motion for summary judgment with respect to Williams's claim regarding Rasmussen's decision will be granted.[6]

## CONCLUSION

---

[5] Unpublished opinions are cited for the soundness of reasoning, not for any precedential value.

[6] In his response in opposition to the defendant's motion to dismiss or, in the alternative, for summary judgment, Williams also raises a disparate impact claim. (Pl.'s Resp., at 1-2.) Claims of disparate impact require the complaining party to show that an employer "uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(k). Title VII suits are limited to claims encompassed in the EEOC charges, *see Riley v. Tech. & Mgmt. Svcs. Corp., Inc.*, 872 F. Supp. 1454, 1459 (D. Md. 1995), and "a plaintiff may not amend her complaint through argument in a brief opposing summary judgment," *Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 455 F. Supp. 2d 399, 436 (D. Md. 2006) (citing *Shanahan v. City of Chi.*, 82 F.3d 776, 781 (7th Cir. 1996)). Williams's allegations both during the EEO administrative process and in this case have concerned specific disciplinary decisions; he has not alleged or provided evidence that NSWCCD employs discriminatory employment practices. Therefore, Williams's disparate impact claim will not be considered.

For the reasons stated above, the defendant's motion for summary judgment will be granted. A separate order follows.

09/22/2015
Date

/S/
Catherine C. Blake
United States District Judge